# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00253-CV

**Texas State Board of Podiatric Medical Examiners, Appellant**

**v.**

**Texas Orthopaedic Association, Texas Medical Association
and Andrew Kant, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT
### NO. GN204022, HONORABLE PAUL DAVIS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

The Texas State Board of Podiatric Medical Examiners (the Board) appeals the trial court's denial of its plea to the jurisdiction. The Board contends that the Texas Orthopaedic Association, Texas Medical Association, and Dr. Andrew Kant (collectively, the Associations) lacked standing to challenge one of its rules because their pleadings did not affirmatively demonstrate that any legal right or privilege of their individual members would be interfered with or impaired by the rule and that there was no threat that the rule would be applied to their members. We disagree with the Board and affirm the trial court's denial of the plea to the jurisdiction.

## BACKGROUND

Although the underlying dispute in this case centers on whether the ankle is part of the foot, we review here only the standing of the Associations to challenge a rule adopted by the

Board. The Board has statutory authority to regulate the practice of podiatry.[1] *See* Tex. Occ. Code Ann. § 202.151 (West 2004). The occupation code does not define "foot." On January 17, 2001, the Board adopted a rule defining the foot as including part of the ankle.[2] The Associations filed suit seeking a declaration invalidating the Board's rule and declaring that the statutory scope of the practice of podiatry is confined to the foot as matter of law.[3] In response, the Board filed a plea to the jurisdiction claiming that the Associations lacked standing to challenge its rule because the legal rights or privileges of the Associations' members have not been interfered with or impaired by the rule and there was no threat that the rule would be applied to their individual members. The trial court denied the plea to the jurisdiction, and this interlocutory appeal followed.[4]

## STANDARD OF REVIEW

Standing is a prerequisite to subject-matter jurisdiction, and subject-matter jurisdiction is essential to a court's power to hear a case. *Texas Ass'n of Bus. v. Texas Air Control*

---

[1] Podiatry is the treatment of or offer to treat any disease, disorder, physical injury, deformity, or ailment of the human foot by any system or method. Tex. Occ. Code Ann. § 202.001(a)(4) (West 2004).

[2] The Board defined foot to include, "the tibia and fibula in their articulation with the talus, and all bones to the toes, inclusive of all soft tissues (muscles, nerves, vascular structures, tendons, ligaments, and any other anatomical structures) that insert into the tibia and fibula in their articulation with the talus and all bones to the toes." 22 Tex. Admin. Code § 375.1 (2001).

[3] The Associations sought declaratory relief under the Administrative Procedure Act (APA) and the Uniform Declaratory Judgments Act. *See* Tex. Gov't Code Ann. § 2001.038 (West 2000); Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a) (West 1997).

[4] A person may appeal from an interlocutory order of a district court that grants or denies a plea to the jurisdiction by a governmental unit. Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (West Supp. 2004-05).

2

*Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). The absence of subject-matter jurisdiction may be raised by a plea to the jurisdiction. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). To invoke a court's authority, a plaintiff must allege facts that affirmatively demonstrate that the court has jurisdiction to hear the cause. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). When a plea to the jurisdiction challenges jurisdictional facts, we consider relevant evidence as necessary to resolve the issues raised. *Id.* at 227. We review the denial of a plea to the jurisdiction *de novo*. *Id.* at 228; *Texas Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002) (citing *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1988)). We liberally construe the pleadings and relevant evidence in favor of jurisdiction, looking to the plaintiff's intent. *Miranda*, 133 S.W.3d at 226; *City of San Angelo v. Smith*, 69 S.W.3d 303, 306 (Tex. App.—Austin 2002, pet. denied).

The general test for standing in Texas requires that there be (a) a real controversy between the parties, which (b) will actually be determined by the judicial declaration sought. *Texas Ass'n of Bus.*, 852 S.W.2d at 446. Texas courts apply the *Hunt* test when determining whether an organization has standing to sue on behalf of its members. *Id.* at 447 (adopting test for associational standing set forth in *Hunt v. Washington State Adver. Comm'n*, 432 U.S. 333, 343 (1977)). An organization has standing to sue on behalf of its members if a review of its pleadings and all evidence relevant to jurisdiction affirmatively demonstrates that (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Id.*

3

**DISCUSSION**

In its sole issue on appeal, the Board argues that the Associations lacked standing to seek a declaratory judgment because they failed to affirmatively demonstrate how the Board's rule interfered with or impaired any legal right or privilege of their individual members.[5] We now apply the *Hunt* test to the facts of this case.

The first prong of the *Hunt* test requires that the Associations' pleadings, in conjunction with any evidence in the record relevant to jurisdiction, demonstrate that the Associations' members have standing to sue in their own behalf. *Id.* This requirement should not be interpreted to impose an unreasonable obstacle to associational standing. *Id.*; *see also New York State Club Ass'n v. City of New York*, 487 U.S. 1, 9 (1986) (stating that purpose of first prong of *Hunt* test is simply to weed out plaintiffs who try to bring cases that could not otherwise be brought by manufacturing allegations of standing that lack any real foundation). It does not appear that the Associations have manufactured this lawsuit, and we conclude that they have demonstrated that the Board's rule impairs[6] a legal right or privilege possessed by their individual members.

Physicians and orthopaedists are licensed to practice medicine in this state as long as they comply with the requirements and regulations of the Texas Medical Practice Act (the Act). *See*

---

[5] To seek declaratory relief under the APA a plaintiff must allege that a rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right of the plaintiff. Tex. Occ. Code. Ann. § 2001.038(a) (West 2000).

[6] Impair is defined as, "to make or cause to become worse; diminish in ability, value, excellence." *Random House Dictionary of the English Language* (Stuart B. Flexner et al. eds., 2d ed. 1987). In construing a statute we start with the plain and common meaning of the statute's words. *Fitzgerald v. Advance Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865 (Tex. 1999); Tex. Gov't Code Ann. § 312.002(a) (West 1998).

Tex. Occ. Code Ann. §§ 151.001-165.160 (West 2004). The legislature believes that the practice of medicine is a privilege and enacted the Act to regulate the granting of that privilege in order to protect the public's interest. *Id.* § 151.003(1). Licensed podiatrists are exempt from complying with the Act as long as they strictly engage in the practice of podiatry as defined by law. *Id.* § 151.052(a)(5).

In their original petition the Associations urge that the Board's expanded definition of foot extends the practice of podiatry beyond its statutory limits and into the practice of medicine regulated by the Act. The Associations contend in their petition that individual physicians have standing to seek a determination of the extent to which podiatrists may engage in the practice of medicine in light of the Board's rule. Although the Associations do not explicitly state that the Board's definition impairs a legal right or privilege of individual Texas physicians, it is clear from their original petition and the attached affidavit of Dr. David Teuscher that they believe that podiatrists have no statutory right to engage in the practice of medicine and that allowing podiatrists to do so undermines the purpose of the Act. Essentially, they assert in their pleading that if the Board grants podiatrists the right to perform procedures that would otherwise be considered the practice of medicine, the privilege of practicing medicine is diminished because podiatrists are neither licensed nor trained to practice medicine.

The Associations have sufficiently demonstrated that the Board's rule may impair a privilege possessed by their individual members. Therefore, their members would have standing to sue in their own right. The Associations have satisfied the first prong of the *Hunt* test.

The second prong of the *Hunt* test requires that the Associations' pleadings and any evidence in the record relevant to this jurisdictional question demonstrate that the interests the Associations seek to protect are germane to their organizational purpose. *Texas Ass'n of Bus.*, 852 S.W.2d at 447. Donna Parker, Executive Director of the Texas Orthopaedic Association, stated in her affidavit that the Orthopaedic Association's mission of promoting high quality musculoskeletal healthcare for Texans requires that it be interested in legislation or rulemaking impacting or regulating the provision of musculoskeletal healthcare in Texas. Similarly, Louis Goodman, Vice President of the Texas Medical Association, asserted in his affidavit that the Medical Association achieves its mission of improving the health of all Texans by being an advocate for patients and the profession of medicine. In this declaratory action, the Associations are seeking to protect the value of their members' right to practice medicine. The question of who has the right to practice medicine is directly related to the quality of the care provided. Therefore, we hold that the Associations have met the second prong of the *Hunt* test.

The final prong of the *Hunt* test requires that the Associations' pleadings and any evidence in the record relevant to this jurisdictional question demonstrate that neither the claim asserted nor the relief requested necessitated the participation of the individual members in the lawsuit. *Id*. The Associations claim that the Board's rule defining foot is invalid. The Associations seek a declaration invalidating the rule and declaring that the practice of podiatry is confined to the foot as a matter of law. The Associations' claim is a question of law that does not require the participation of individual members; the relief sought is a declaratory ruling that would be uniformly

6

applied to physicians and podiatrists. We hold that the Associations have satisfied the final prong of *Hunt*.

The Associations' pleadings in conjunction with all relevant jurisdictional evidence affirmatively demonstrate that they have standing to challenge the Board's rule. Therefore, we overrule the Board's only issue on appeal.

## CONCLUSION

We hold that the trial court correctly denied the plea to the jurisdiction and affirm the trial court's ruling.

_____

Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Pemberton

Affirmed

Filed: November 12, 2004