

# COURT OF APPEALS

## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-13-00161-CV

ROLLING PLAINS MANAGEMENT
CORPORATION OF BAYLOR,
COTTLE, FOARD, HARDEMAN,
AND WILBARGER COUNTIES
D/B/A SHARP LINES RURAL
PUBLIC TRANSPORTATION

APPELLANT

V.

PATRICIA HOBBS,
ADMINISTRATRIX OF THE
ESTATE OF PATTY BLACKBURN,
DECEASED

APPELLEE

----------

FROM THE 78TH DISTRICT COURT OF WICHITA COUNTY

----------

## MEMORANDUM OPINION[1]

----------

---

[1]*See* Tex. R. App. P. 47.4.

## I. INTRODUCTION

This is an interlocutory appeal from a trial court order denying a plea to the jurisdiction that was filed by Appellant Rolling Plains Management Corporation of Baylor, Cottle, Foard, Hardeman, and Wilbarger Counties d/b/a Sharp Lines Rural Public Transportation (Rolling Plains). The sole issue we address in this appeal is whether Rolling Plains possessed actual notice "that the claimant, has received some injury" as required under section 101.101(c) of the Texas Tort Claims Act (TTCA). Tex. Civ. Prac. & Rem. Code Ann. § 101.101(c) (West 2011). The undisputed facts presented to the trial court establish that Rolling Plains possessed actual notice and knowledge that Patty Blackburn—a passenger on a mini-bus operated by Rolling Plains—had received some injury when the mini-bus rear-ended a vehicle in front of it, and according to the bus driver, Blackburn went "flying to the front of the bus," landed on the floor of the bus, did not respond when asked if she was okay, and was transported to the emergency room by ambulance. Accordingly, we will affirm the trial court's order denying Appellant's plea to the jurisdiction.

## II. PROCEDURAL BACKGROUND

Rolling Plains is a rural public transportation provider, providing transportation to low income individuals in five counties of north central Texas; Rolling Plains qualifies, statutorily, as a governmental unit.[2] Appellee Patricia

---

[2]It is undisputed that Rolling Plains is a governmental unit. Rolling Plains's plea to the jurisdiction and attached documents establish that it meets the

Hobbs, Administratrix of the Estate of Patty Blackburn, deceased, filed suit against Rolling Plains for personal injuries Blackburn suffered as a passenger on a mini-bus operated by Rolling Plains when it rear-ended another vehicle.[3] Rolling Plains filed a plea to the jurisdiction, pointing out that Blackburn had not provided it written notice under section 101.101(a) of the TTCA and claiming that it lacked actual notice of any injury to Blackburn.[4] Following an evidentiary hearing, the trial court denied Rolling Plains's plea to the jurisdiction. Rolling Plains perfected this appeal, raising a single issue challenging the denial of its plea to the jurisdiction.

---

definition of a rural public transportation provider and thus falls within the definition of a rural transit district. *See* Tex. Transp. Code Ann. § 458.001(2), (3) (West Supp. 2013) (defining "rural public transportation provider" and "rural transit district"). A "rural transit district" is a political subdivision of the state, and a political subdivision of the state is a governmental unit entitled to immunity unless a claim falls within the limited waiver of immunity provided by the TTCA. *See id.* § 458.001(3) (defining "rural transit district"); Tex. Civ. Prac. & Rem. Code Ann. § 101.001(3)(B) (West Supp. 2013) (defining "governmental unit" for purposes of application of the TTCA as including a political subdivision), § 101.021 (West 2011) (setting forth three specific areas of liability for a governmental unit).

[3]Blackburn died sometime later of causes unrelated to the accident.

[4]Rolling Plains conceded in the trial court and concedes on appeal that it possessed actual notice of the accident, of Rolling Plains's alleged fault in the accident, and of the parties that were involved in the accident. Rolling Plains's counsel explained at the plea to the jurisdiction hearing,

> I'm not here to argue that we didn't know who was involved. We knew that. We knew there was an accident. We know the basic construct of the evidence; it was a rear-end collision. That's not what's at issue, Judge. What's in issue here is the matter of injury, and did we cause an injury as a result of this accident.

### III. FACTUAL BACKGROUND

The facts are undisputed. On November 22, 2010, Blackburn was a passenger on a mini-bus operated by Rolling Plains. Blackburn had some physical problems and was wearing a back brace. The mini-bus rear-ended a vehicle. As a result of the impact, Blackburn was thrown from her seat and landed in the aisle on the floor near the front of the bus. Sharon McClanahan, the driver of the bus, asked another Rolling Plains driver, who had arrived on the scene just after the accident, to call 911.

Immediately after the accident, McClanahan also called Sharon Bowman, the lead dispatcher for Rolling Plains and the person at Rolling Plains in charge of investigating accidents. Bowman asked whether anyone was injured, and McClanahan explained that Blackburn had come out of her seat and was lying on the floor at the front of the bus. Bowman told McClanahan to call an ambulance. Bowman testified at the hearing on the plea to the jurisdiction:

Q. Why would you tell her [McClanahan] to call an ambulance?

A. To verify that there was no injuries. I mean, we just -- for their safety, just -- we wanted to make sure she was okay.

Q. Who did you want to make sure was okay?

A. Mrs. Blackburn.

Q. Now, why would you want to make sure she was okay at this moment -- at that moment?

4

A.  Well, because -- because we are concerned about our clients, and we just want to make sure that they're okay, because of the accident.

Q.  Did you think she may have been harmed because of the accident?

. . . .

A.  We just wanted to make sure she was okay.

Portions of McClanahan's deposition were read into the record at the hearing on the plea to the jurisdiction, including the following testimony:

Q.  Why did you ask [another Rolling Plains driver] to call 911?

A.  Because I wanted to make sure [Blackburn] was okay.

Q.  Did you think she was injured?

A.  Well, she came from her seat -- she didn't have her seat belt on, so she came from her seat up to the front of the bus, and was laying on the floorboard.

Q.  Did you have reason -- did you feel like you observed that Ms. Blackburn was injured?

A.  She had already had some health issues, and she was wearing a back brace, and so I wanted to make sure that she was okay from that.  I didn't want it to cause further problems.

As Blackburn lay on the floor of the bus, McClanahan asked Blackburn if she was okay; although Blackburn appeared conscious, she did not respond.  When Blackburn was asked why she was not wearing her seatbelt, she said that she was trying to get money out of her pocket for lunch.  An ambulance arrived on the scene, and paramedics loaded Blackburn into the ambulance and transported her to the hospital emergency room.

Bowman conducted an immediate follow-up investigation of this accident. After Blackburn was transported to the emergency room, Bowman called the hospital and learned that Blackburn would be discharged from the hospital later that day. Bowman claimed that the hospital did not mention to her that Blackburn had sustained any injuries. A Rolling Plains driver took Blackburn home from the hospital after she was discharged. Bowman talked to that driver and claimed that the driver did not mention to her that Blackburn had sustained any injuries. Finally, Bowman called Blackburn a few days after the accident and claimed that Blackburn did not mention to her that Blackburn had sustained any injuries.

Rolling Plains's accident file on the collision in question includes a Texas Peace Officer's Crash Report prepared by the City of Wichita Falls Police Department. The police report places fault for the accident on McClanahan. The police report also indicates that Blackburn was taken by ambulance to the hospital. A Rolling Plains vehicle/property damage report contained in Rolling Plains's accident file sets forth McClanahan's handwritten description of the accident; in it, she admits rear-ending the vehicle in front of her when it stopped "all of a sudden" and describes that Blackburn went "flying to the front" of the bus upon impact of the vehicles. Bowman conceded at the hearing on the plea to the jurisdiction that "flying to the front" of the bus was different than, and more than, simply falling to the front of the bus. Rolling Plains's accident file also includes an estimate for approximately $3,000 of repairs to the Rolling Plains mini-bus and an email to Shawn Lowery, an insurance adjuster or insurance company agent

6

for Rolling Plains, concerning the collision; handwritten across the middle bottom half of the printed email is the name "Patty Blackburn" along with Blackburn's telephone number.

## IV. STANDARD OF REVIEW

The TTCA's notice provision is a jurisdictional requirement. *See* Tex. Gov't Code Ann. § 311.034 (West 2013). Thus, lack of notice may be raised by a governmental unit in a plea to the jurisdiction. *See, e.g.*, *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004) (explaining that sovereign immunity from suit defeats a trial court's subject matter jurisdiction and thus is properly asserted in a plea to the jurisdiction). Whether a court has subject matter jurisdiction is a question of law. *State v. Holland*, 221 S.W.3d 639, 643 (Tex. 2007). Accordingly, we review a trial court's ruling on a plea to the jurisdiction de novo. *Holland*, 221 S.W.3d at 642; *Miranda*, 133 S.W.3d at 226. Whether undisputed evidence of jurisdictional facts establishes a trial court's jurisdiction is also a question of law. *Miranda*, 133 S.W.3d at 225–26. Applying this standard of review, we analyze the trial court's ruling denying Rolling Plains's plea to the jurisdiction.

## V. ANALYSIS

In its sole issue, Rolling Plains contends that it did not have actual notice sufficient to comply with the notice requirement of the TTCA. Rolling Plains argues that although it was aware of the accident and the parties involved and that it may have allegedly been at fault, it did not have the requisite actual notice

7

of an injury to Blackburn that was caused or contributed to by some fault on the part of Rolling Plains.

Section 101.101 of the TTCA is titled, "Notice," and provides,

(a)  A governmental unit is entitled to receive notice of a claim against it under this chapter not later than six months after the day that the incident giving rise to the claim occurred.  The notice must reasonably describe:

(1) the damage or injury claimed;

(2) the time and place of the incident; and

(3) the incident.

. . . .

(c)  The notice requirements provided or ratified and approved by Subsections (a) and (b) do not apply if the governmental unit has actual notice that death has occurred, that the claimant has received some injury, or that the claimant's property has been damaged.

Tex. Civ. Prac. & Rem. Code Ann. § 101.101(a), (c).  Blackburn did not provide Rolling Plains with written notice of her claim under subsection (a).  *Id.* § 101.101(a).  Consequently, the issue is whether Rolling Plains possessed actual notice that Blackburn had "received some injury."  *Id.* § 101.101(c).

Rolling Plains contends that it did not have actual, subjective awareness that Blackburn had suffered any injury in the rear-end collision because no one told Rolling Plains that Blackburn had suffered any injury.  Rolling Plains does not dispute its knowledge of any of the above facts; Rolling Plains instead argues that knowledge of these facts is not actual knowledge of an injury to Blackburn and that to satisfy the notice requirement of section 101.101(c) of the TTCA, it

8

must have had knowledge of a specific injury resulting from the accident. *See Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995). Citing *Texas Department of Criminal Justice v. Simons*, Rolling Plains argues that the notice required under section 101.101(c) is "the very same notice that it was entitled to receive under [section] 101.101(a)." *See* 140 S.W.3d 338, 347 (Tex. 2004). Rolling Plains contends that it must have possessed actual notice that Blackburn sustained a specific injury and that it had "no knowledge whatsoever of any injury sustained by Ms. Blackburn."

The lack-of-actual-notice cases relied upon by Rolling Plains pivot on the governmental unit's lack of actual knowledge of its alleged fault, not on the governmental unit's lack of actual notice of the alleged injury. *See Simons*, 140 S.W.3d at 347 (explaining that evidence of notice under section 101.101(c) of the TTCA must show that governmental unit had "actual, subjective awareness of its fault in the matter"); *Cathey*, 900 S.W.2d at 341–42 (explaining that evidence of notice under section 101.101(c) of the TTCA did not raise fact issue that hospital had "actual notice of any alleged culpability on its part producing or contributing to any injury" of plaintiffs). Here, there is no question that Rolling Plains possessed actual, subjective awareness of its fault; a Rolling Plains driver rear-ended a vehicle, and the police report of the accident places fault on the Rolling Plains driver. Thus, the actual notice cases cited by Rolling Plains are only tangentially applicable here.

The notice requirements of section 101.101(c) of the TTCA do not require actual knowledge by the governmental unit of each and every specific personal injury suffered by a claimant or of a specific type of injury suffered by a claimant. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.101(c) (requiring "actual notice that . . . the claimant has received *some* injury") (emphasis added); *see also City of Wichita Falls v. Jenkins*, 307 S.W.3d 854, 856 (Tex. App.—Fort Worth 2010, pet. denied) (rejecting contention that written notice of claim failed to "describe the nature and extent of their injuries" suffered by plaintiffs when the written notice of claim stated that plaintiffs had sustained "personal injuries and other damages"); *Tarrant Cnty. Hosp. Dist. v. Ray*, 712 S.W.2d 271, 274 (Tex. App.—Fort Worth 1986, writ ref'd n.r.e.) (pointing out that court's charge defined "actual notice" as "that knowledge or information which a county governmental unit-hospital received by some means reasonably describing an injury of Tyeshia Hall and the time, manner[,] and place of the incident from which it arose" and further stated that "[a]ctual notice does not require a description of the nature and extent of the injury in full medical detail"). As summed up in Appellee's brief:

> In the present case, Bowman, Rolling Plains Management's accident investigator, knew about the rear[-]end collision and Blackburn's physical condition immediately after the crash. McClanahan testified Blackburn remained motionless and did not say anything after the crash. Bowman knew Blackburn had been thrown to the front of the bus where she remained unresponsive[,] and emergency medical treatment was required and requested by Rolling Plains Management employees. Bowman knew Blackburn was taken by the first responders to the emergency room where she received further medical treatment. Bowman also knew exactly how long Blackburn was admitted to the hospital and when she was

10

discharged. . . . Rolling Plains Management had subjective knowledge its employee rear-ended another vehicle[,] and as a result[,] Blackburn needed and received emergency medical treatment. . . . [Rolling Plains] is demanding more than it is entitled to under the notice provision of the Act by asking this Court to create a requirement for notice of a specific medical diagnosis.

Because the undisputed facts before the trial court established that Rolling Plains—specifically Bowman—possessed actual knowledge of all of these facts: that an accident occurred; that Rolling Plains caused the accident; that Blackburn flew to the front of the bus from the impact of the vehicles; that Blackburn was lying on the floor of the bus and did not respond when asked whether she was okay; that Rolling Plains—specifically Bowman—told the Rolling Plains driver to call 911 for an ambulance for Blackburn; and that Rolling Plains knew Blackburn was taken to and treated in the emergency room following the accident, we hold that Rolling Plains possessed actual knowledge and subjective notice that its fault produced or contributed to some injury to Blackburn. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.101(c); *see also City of San Antonio v. Johnson*, 140 S.W.3d 350, 351 (Tex. 2004) (explaining that actual notice under the TTCA must be based on facts actually known by the governmental unit, not on facts the governmental entity could have learned).

We overrule Rolling Plains's sole issue.

11

## VI. CONCLUSION

Having overruled Rolling Plains's sole issue, we affirm the trial court's order denying Rolling Plains's plea to the jurisdiction.

SUE WALKER
JUSTICE

PANEL: LIVINGSTON, C.J.; DAUPHINOT and WALKER, JJ.

DELIVERED: March 20, 2014